*In the Matter of John Homick*, *et al.*, Case No. 33, September Term 2022.  Opinion filed on December 1, 2022, by Berger, J.

SCOPE OF REMAND – REVIEWING NEW EVIDENCE – LAW OF THE CASE

When the circuit court, exercising appellate jurisdiction, remanded a matter to the Zoning Board for "further proceedings" or "further clarifications," the Board could review additional or new evidence in making its findings and providing additional explanation for its decision, in accordance with the remand order.

LAW OF THE CASE – COMPLIANCE WITH OPINION MANDATING REMAND

The Zoning Board did not violate the "law of the case" because it did not relitigate issues already settled in prior appellate decisions regarding the matter at issue.  In this case, the circuit court's affirmance of the denial of variances did not determine whether those variances were needed for the approval of the special exception.  Therefore, the Board's approval of the special exception without the variances did not contradict the "law of the case."

SUBSTANTIAL EVIDENCE – ZONING BOARD DECISIONS

The Zoning Board made findings of fact in accordance with the requisite criteria of the applicable provisions of a municipality's zoning code, thereby supporting its decision with substantial evidence. In so doing, the Zoning Board could rely on staff reports and similar documents issued by departments or agencies tasked with reviewing zoning applications.

ARBITRARY & CAPRICIOUS – FAIRLY DEBATABLE

A Zoning Board's decision was not "arbitrary and capricious" when the Board sought to avoid a "formalistic" interpretation of the zoning code that could render the agency's approval process "virtually unworkable."  Accordingly, the administrative and economic concerns at issue were "fairly debatable."

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 33

September Term, 2022

_____

IN THE MATTER OF
JOHN HOMICK, ET AL.

_____

Berger,
Arthur,
Kenney, James A., III
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Berger, J.

_____

Filed: December 1, 2022

*Ripken, Laura S., J., did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal arises from a decision by the Board of Appeals of the City of Annapolis ("the Board") approving a special exception for Appellees, Noreast Holdings, LLC, et al. ("Noreast"), to develop land on 424–428 Fourth Street in Annapolis, Maryland ("the Property"). In so doing, the Board denied Noreast's requested variances to allow sufficient parking as prescribed by the Planning and Zoning title of the Annapolis City Code ("the Code"). Appellees, a group of local citizens ("Protestants") -- John Homick, Rena Henegan, Tracy A. Ross, and Phillip A. Vivaldi -- appealed the Board's approval of the special exception to the Circuit Court for Anne Arundel County, and Noreast appealed the Board's denial of the variances. Following a hearing, the circuit court issued a memorandum opinion and order ("the Remand Order") affirming the denial of the variances but determining that the Board's findings failed to sufficiently explain how the special exception could proceed in light of the variance denials. Accordingly, the circuit court remanded the matter to the Board "for further clarification consistent with this ruling." *In re Homick*, No. C-02-CV-20-001009, slip op. at 8 (Cir. Ct. Anne Arundel Cnty. Mar. 29, 2021).

Pursuant to the Order, the Board issued a decision ("the Decision") in June 2021, explaining its determination that the special exception could comply with the requisite parking requirements, despite the denial of the variances, due to the conditions placed on the special exception and the proposed modifications to the site development plan ("SDP"). Protestants again appealed the Decision to the circuit court, which, in February of 2022, ruled the Board sufficiently explained its granting of the special exception without the

variances, followed the provisions of the Code, and adduced substantial evidence to support its Decision. Protestants timely appealed that court's ruling to this Court.

Protestants present four questions for our review,[1] which we have rephrased for clarity and consolidated into three questions as follows:

    I.    Whether the Board exceeded the scope of the circuit court's Remand Order when it considered new evidence in articulating the Board's approval of the special exception despite the denial of the variances.

    II.    Whether the Board made sufficient, affirmative findings of fact required by the review criteria articulated in the Code, producing a record with substantial evidence to

---

[1] Protestants' original questions presented, adopted verbatim by Noreast, are as follows:

1. Whether the Board exceeded the scope of the Circuit Court's Remand Order when it considered new evidence and made findings of fact that contradicted the determinations made by the Circuit Court in the Remand Order.

2. Whether the Board erred legally when it determined that it need not make affirmative findings of fact for each review criterion required under Section 21.26.050 when it conditionally approves a special exception.

3. Whether the administrative record includes substantial evidence to support a finding that Appellee-Applicant would, at some point, be able to provide adequate parking on-site without need for a variance or major amendment to the existing site design plan.

4. Whether the Board acted arbitrarily and capriciously when it based its decision to approve the Special Exception on individual preference instead of the criteria outlined in Section 21.26.050.

2

support the approval of the special exception with conditions.

III. Whether the Board acted arbitrarily or capriciously when it approved the special exception.

For the reasons explained herein, we affirm the Board's Decision granting the special exception.

## FACTS AND PROCEDURAL HISTORY

We address the preliminary facts leading to this appeal below. We will discuss additional facts as necessary in our analysis.

The proposed redevelopment of the Property, as reflected on Noreast's SDP, sought to build anew or retrofit existing buildings to create a 75-seat restaurant, four dwelling-unit apartments, and roughly 2,000 square feet of commercial office space. To that end, Noreast filed three applications with the City of Annapolis' Department of Planning and Zoning ("the Department"): Noreast sought (1) a zoning district boundary adjustment that would extend the commercial B-2 zoning classification across what had been a split-zoned lot; (2) zoning variances related to applicable yard requirements influencing how parking could be arranged on the property; and (3) a special exception to operate a 75-seat restaurant. Through 2019, the Board held four hearings on these applications before issuing a March 3, 2020 opinion and order approving the zoning district boundary adjustment, denying the variances, and granting the special exception with twenty conditions specified therein.

Both parties appealed that order to the Circuit Court for Anne Arundel County, with Noreast appealing the denial of the variances, and Protestants appealing the granting of the

3

zoning district boundary adjustments and the granting of the special exception.[2] On March 29, 2021, the circuit court issued the Remand Order affirming both the approval of the zoning district boundary adjustment and the denial of the variances but remanding the issue of the special exception with instructions to the Board to better articulate how it could deny the variances sought to comply with parking provisions of the zoning code, yet still approve the special exception. Protestants appealed the affirmance of the zoning district boundary adjustment approval to this Court. We affirmed the Board's granting of the adjustment. *In re Homick*, No. 262, Sept. Term, 2021, slip op. at 19 (filed June 14, 2022).

Following the Remand Order from the circuit court directing clarification on the special exception, the Board held hearings on May 19 and June 1, 2021. On June 8, 2021, the Board issued the Decision explaining how, under a modified SDP that lessened the number of restaurant seats from 75 to 65 (and that incorporated the zoning district boundary adjustment and modified the parking alignment on the Property accordingly), as well as the approval with conditions and dependent on strict adherence to a Parking Management Plan articulated in the Board's initial approval of the project, the special exception could be approved despite the denial of the variances. Protestants again petitioned the circuit

---

[2] The Circuit Court for Anne Arundel County entertains petitions for judicial review from decisions made by the Board of Zoning Appeals for the City of Annapolis. *See* Annapolis, Md., Code § 21.20.040 (providing that Board decisions regarding zoning boundary adjustments shall be appealed to the Circuit Court for Anne Arundel County); § 21.26.050(H), 21.26.090 (providing that Board decisions regarding special exceptions shall be appealed to Circuit Court for Anne Arundel County); § 21.28.070(A) (Board decisions regarding variances shall be appealed to Circuit Court for Anne Arundel County); § 21.30.040 ("Any person aggrieved by any decision of the Board of Appeals may file a petition for judicial review of that decision to the Circuit Court of Anne Arundel County.").

court for judicial review. In a February 7, 2022 order, the circuit court upheld the Decision. Protestants then timely appealed to this court.

## DISCUSSION

### Standard of Review

When reviewing a decision by an administrative agency, this Court "looks through" the decision of the circuit court, applying the same standards of review to determine whether the agency itself erred. *Brandywine Senior Living at Potomac LLC v. Paul*, 237 Md. App. 195, 210 (2018). "We are limited to evaluating whether there is substantial evidence in the record as a whole to support the agency's findings and conclusions and to determining whether the administrative decision is premised upon an erroneous conclusion of law." *Id.* (citing *Halici v. City of Gaithersburg*, 180 Md. App. 238, 248 (2008)). "In this context, substantial evidence, as the test for reviewing factual findings of administrative agencies, has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Piney Orchard Cmty. Ass'n v. Md. Dep't of Env't*, 231 Md. App. 80, 91–92 (2016) (quoting *Tomlinson v. BKL York LLC*, 219 Md. App. 606, 614 (2014)). "Furthermore, not only is the province of the agency to resolve conflicting evidence, but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences." *Brandywine Senior Living at Potomac LLC*, *supra*, 237 Md. App. at 211 (quoting *Pollock v. Patuxent Inst. Bd. of Rev.*, 374 Md. 463, 477 (2003)).

Although this Court defers to the factual findings of agencies, we review their decisions regarding matters of law *de novo*, while still providing a degree of deference on

5

some legal issues in accordance with the position of the agency. *Willow Grove Citizens Ass'n v. Cnty. Council of Prince George's Cnty.*, 235 Md. App. 162, 168 (2017) (citing *Wallace H. Campbell & Co. v. Md. Comm'n on Hum. Rels.*, 202 Md. App. 650, 663 (2011)). "Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." *Id.* at 168–69 (quoting *Grasslands Plantation, Inc. v. Frizz-King Enters., LLC*, 410 Md. 191, 204 (2009)).

## I.     This Court Has Jurisdiction Over This Appeal.

Though not argued or briefed by either party, we must first address whether this Court has jurisdiction over this appeal. "It is an often stated principle of Maryland Law that appellate jurisdiction, except as constitutionally authorized, is determined entirely by statute, and that, therefore, a right of appeal must be legislatively granted." *Rogers v. Eastport Yachting Ctr., LLC*, 408 Md. 722, 732 (2009) (quoting *Gisriel v. Ocean City Bd. of Supervisors of Elections*, 345 Md. 477, 485 (1997)). This court has jurisdiction over appeals from final judgments in civil and criminal cases. Md. Code (2006, 2020 Repl. Vol.), § 12-301 of the Courts & Judicial Proceedings Article ("CJP"). We do not have jurisdiction over appeals from final judgments of a court exercising "appellate jurisdiction in reviewing a decision from the District Court, an administrative agency, or a local legislative body," unless expressly provided such jurisdiction by law. CJP § 12-302(a). "As long as a circuit court is acting within its special statutory jurisdiction, the limitation upon the right to appeal is applicable regardless of the issues being raised." *Prince George's Cnty. v. Beretta U.S.A. Corp.*, 358 Md. 166, 180 (2000).

6

The Code requires parties to appeal a decision by the Board regarding the granting or denial of a special exception to the Circuit Court for Anne Arundel County. Annapolis, Md., Code §§ 21.26.050(H), 21.26.090; *see also* § 21.20.040. Therefore, an appeal from a ruling rendered by that court is a final judgment upon which this Court does not have jurisdiction to review, unless such jurisdiction can be found in a relevant law. *Gisriel v. Ocean City Bd. of Supervisors of Elections*, 345 Md. 477, 496 (1997) (holding the circuit court reviewing an adjudicatory decision of an agency or local legislative body "renders a final judgment within its jurisdiction, [CJP] § 12–302(a) is applicable, and an appeal to the Court of Special Appeals is not authorized by [CJP] § 12–301").

More than a dozen provisions of the Code grant the Circuit Court for Anne Arundel County appellate jurisdiction for decisions of the Board, the Planning Commission, or similar administrative bodies, but the Code only grants the right to "further appeal" a ruling from the circuit court to this Court for decisions made by the Historic Preservation Commission. § 21.56.110. Searching beyond the confines of the Code, Maryland's Land Use Article provides that the parties litigating zoning disputes, like those in this case, have the right to "appeal a judgment of the circuit court with the Court of Special Appeals," in compliance with the Maryland Rules. Md. Code (2012, 2012 Repl. Vol.), § 4-405(b)(1) of the Land Use Article ("LU"); LU § 4-406(b) ("A judgment of the circuit court under this section may be appealed to the Court of Special Appeals."). Therefore, this Court has jurisdiction over this appeal. *See Gisriel*, *supra*, 345 Md. at 496.

**II.     The Board Did Not Exceed or Contradict the Scope of the Circuit Court's Remand Order and Opinion When It Considered the Site Plan Modifications in Explaining How the Board Could Affirm the Special Exception While Denying the Variances.**

The circuit court's March 2021 Remand Order affirming the denial of the variances but seeking clarification for the approval of the special exception did not so constrain the Board upon remand that it could not consider changes to the SDP.  Further, the circuit court's affirmance of the denial of the variance did not dictate that the only way such a special exception could be approved would have been with the approval of the requested variances.  Such an interpretation would have preordained the Board's "clarifications" on remand to reversing its prior decision and reversing the special exception.

The Remand Order permitted the Board to approve the redevelopment on remand despite the prior denial of variances needed to satisfy parking requirements under Noreast's original SDP, so long as the Board could adequately explain how it reached such a conclusion.  By considering both modifications to the SDP that reduced seating capacity and the zoning district boundary adjustment, the Board determined the plan could comply with the Code's minimum parking requirements.  As we will explain, the Board fully complied with the mandate of the Remand Order remanding the matter to the Board "for further clarification."  *Homick*, *supra*, No. C-02-CV-20-001009, slip op. at 8.

***The Board Did Not Err in Considering "New Evidence" Upon Remand.***

While both parties agree the Board weighed materials not previously considered in its initial review of the application for a special exception, they have starkly different

8

characterizations of whether such review was within the confines of the circuit court's Remand Order.

Protestants assert the Remand Order strictly required the Board to articulate precisely how the 75-seat restaurant proposed in the original SDP could meet the Code's parking requirements despite the denied variances. In Protestants' view, consideration of any other hypothetical SPD or alterations to the original SDP and its seating or parking arrangements defied the Remand Order's mandate that the Board explain precisely how the SDP originally put forth by Noreast could meet the parking requirements without the variances. Therefore, the Board's consideration of the amended 65-seat SDP to determine the special exception's compliance with the Code belies the circuit court's mandate and was not permitted.

Noreast insists the Board's evaluation of the new SDP is squarely within the bounds of the Remand Order because the circuit court's instructions were to provide clarification as to how the special exception is permissible despite the denial of the variances. Thus, in Noreast's view, the constraints imposed by the Order and its mandate were that the Board: (1) could not reconsider the denial of the variances; and (2) must explain how approval of the special exception could meet the zoning requirements for parking despite the lack of variances. Because the circuit court did not impose a limitation on considering new evidence, and the Board articulated factual findings explaining how the amended 65-seat SDP met the parking requirements of the Code without variances, the Decision complied with the mandate and should be affirmed.

9

Under Maryland Rule 8-604(d), an appellate court must state the purpose of remand, with "[t]he order of remand and the opinion upon which the order is based [being] conclusive as to the points decided." If the remand order or opinion "*specifically limits* the proceedings on remand," the agency or remand court must adhere to those limitations. *See Powell v. Md. Aviation Admin.*, 336 Md. 210, 222 (1994) (emphasis added). Lacking a precise limit, "the lower court shall conduct *any further proceedings necessary* to determine the action in accordance with the opinion and order of the appellate court." Md. Rule 8-604(d)(1) (emphasis added).

In the context of reviewing the decisions of an administrative agency, if the appellate court cannot determine if the administrative agency committed error because the court cannot discern the basis of the agency's findings, the appropriate remedy is to remand the dispute to the agency for "further proceedings." *People's Couns. for Balt. Cnty. v. Country Ridge Shopping Ctr., Inc.*, 144 Md. App. 580, 596 (2002) (citations omitted); *see also Montgomery Cnty. v. Stevens*, 337 Md. 471, 486 (1995) (noting that it would be inappropriate for an appellate court to consider new evidence when determining if an administrative agency's findings were based on sufficient facts and correct law, when instead the appellate court can remand the matter to the agency for such further development of the record).

This Court has considered "further proceedings" to be open-ended, barring a more limiting instruction, so long as the court or administrative body adheres to the prerogative of the mandate in making the appellate court's requested findings or clarifications. *See People's Counsel for Balt. Cnty.*, *supra*, 144 Md. App. at 593–94 (holding, upon remand

10

requiring "further proceedings" to explain its conclusions, the board of appeals could have: (1) simply clarified the basis of its original ruling, or (2) made a *de novo* policy decision based on the proper factors, or (3) determined the initial record was insufficient and supplemented it with additional arguments or evidence, or (4) ignored the record and proceeded with a new *de novo* hearing). "Ordinarily, an administrative agency has wide discretion to reopen a case even after it has begun to deliberate." *E. Outdoor Advert. Co. v. Mayor & City Council of Balt.*, 146 Md. App. 283, 304 (2002) ("*Eastern Outdoor II*").

The two-part *Eastern Outdoor* cases concerned the appeal of the Baltimore City Board of Municipal and Zoning Appeals' ("the BMZA") denial of a conditional use permit to erect a billboard in Baltimore's Mount Vernon neighborhood.[3] *Id.* at 290–91. In its first ruling on the matter, this Court held that the BMZA failed to make sufficient factual findings to support its denial of the application. *Id.* at 292. In reversing the BMZA's decision, this Court issued a remand order for "further consideration of the record not inconsistent with the court's opinion." *Id.* (quoting *E. Outdoor Advert. Co. v. Mayor & City Council of Balt.*, 128 Md. App. 494, 532 (1990) ("*Eastern Outdoor I*")). Under this mandate, the BMZA conducted new hearings and received additional evidence, including submitted letters and public comment, before ultimately denying the application a second

---

[3] The factual similarities between the case at bar and the dispute in *Eastern Outdoor* are more salient considering "[t]he terms 'special exception' and 'conditional use' are essentially interchangeable." *People's Couns. for Balt. Cnty. v. Loyola Coll. in Md.*, 406 Md. 54, 71 n.19 (2008); *see also Cnty. Council of Prince George's Cnty. v. Zimmer Dev. Co.*, 444 Md. 490, 513 n.17 (2015) ("A special exception, sometimes called a 'conditional use,' is a zoning device that provides a middle ground between permitted and prohibited uses.").

11

time. *See id.* at 292–99. Eastern Outdoor again appealed, arguing that the BMZA was "'plainly wrong' in receiving additional evidence, rather than confining its review to the existing record." *Id.* at 302.

This Court disagreed, "conclud[ing] that, on remand, the BMZA was entitled to supplement the existing record with additional relevant evidence."[4] *Id.* at 303. It is well settled that an appellate court may remand a matter to an administrative body "for further proceedings to the end that valid and essential findings may be made . . . . If further evidence is necessary and available to supply the basis for findings on material points, that evidence may be taken." *Id.* at 305 (quoting *Ford Motor Co. v. Nat'l Lab. Rels. Bd.*, 305 U.S. 364, 374 (1939)).

Similarly, the circuit court in the case *sub judice* held that the Board "[f]ailed to make the necessary affirmative factual findings in its decision to explain how the special exception is permissible in light of the denial of the parking variances," and proceeded to remand the matter to "the Board for *further clarification* consistent with the Court's ruling herein." *Homick*, *supra*, No. C-02-CV-20-001009, slip op. at 8 (emphasis added).

Protestants attempt to distinguish the remand order analyzed in *Eastern Outdoor* from the Remand Order issued in this case by characterizing the *Eastern Outdoor* remand

---

[4] This Court ultimately held that, though the BMZA's review of additional evidence did not violate the remand order, the BMZA again failed to articulate adequate factual findings and thus failed to rectify the concerns prompting remand in *Eastern Outdoor I*, resulting in an affirmance of the Baltimore City Circuit Court's remand order following Eastern Outdoor's appeal of the BMZA's second denial of the application. *See Eastern Outdoor II*, *supra*, 146 Md. App. at 327.

as a "general order of remand," whereas the Remand Order in this case was "therefore narrower," seeking specific clarification as to the approval of the special exception in light of the variance denials. *Compare id.* at 8 *with Eastern Outdoor II*, *supra*, 146 Md. App. at 292. Protestants assert that in *Eastern Outdoor*, the court determined that the Board's factual findings denying the permit were insufficient, thus warranting broader proceedings upon remand, whereas, in this case, the circuit court's Remand Order determined that the Board "adequately articulated factual conclusions[, and] there is substantial evidence in the record to support the Board's decision." *Compare Homick*, *supra*, No. C-02-CV-20-001009, slip op. at 17–18 *with Eastern Outdoor II*, *supra*, 146 Md. App. at 292. As such, Protestants maintain that the mandate limited the Board to addressing only how the special exception could be approved without the variances and warranted no further factfinding. We are not persuaded.

First, the circuit court's ruling that the Board had "adequately articulated its factual conclusions" related to the court's determination that the Board applied the correct standards and articulated sufficient conclusions and substantial evidence in support of its decision to grant the zoning district boundary adjustment. The circuit court made a similar finding of sufficient standards and facts in affirming the denial of the variances. It made no such findings regarding the special exception. Because the circuit court affirmed the denial of the variances and the granting of the zoning district boundary adjustment, those issues could not be relitigated on remand. Any statements regarding factual sufficiency of either of those decisions by the Board had no bearing on the issue of factual sufficiency regarding the special exception outside of establishing that the variances could not be

13

considered in the evaluation of the special exception. *See Powell*, *supra*, 336 Md. 210, 222 (1994); Md. Rule 8-604(d).

Second, the circuit court's opinion clearly provided that the Board "failed to make the necessary factual findings in its decision to explain how the special exception is permitted in light of the denial of the parking variance. Accordingly, the issue is remanded to the Board for further clarification." *Homick*, *supra*, No. C-02-CV-20-001009, slip op. at 8. This tracks with this Court's order and opinion in *Eastern Outdoor I*, which determined that the BMZA failed to articulate sufficient findings of fact required to deny the permit sought and remanded the matter "for further consideration of the record not inconsistent with this opinion." *Eastern Outdoor II*, *supra*, 146 Md. App. at 293 (quoting *Eastern Outdoor I*, 128 Md. App. 494, 532 (1990)). Both mandates essentially require the respective administrative body to review facts and flesh out its decisions by articulating the findings needed, without contradicting other rulings within the opinion ordering remand. This Court's holding in *Eastern Outdoor II* clarifies that such a review could include facts not considered when the application was first evaluated.

Accordingly, in order to be consistent with the circuit court's mandate, the primary limitation on the Board was that it could not incorporate the variances sought by Noreast as the basis for explaining how the special exception would be permissible, since the court's "ruling herein" included both the Remand Order regarding the granting of the special exception and the affirmance of the Board's denial of those variances. *Id.*; Md. Rule 8-604(d). The Board's consideration of "new evidence" via the modified SDP, which reduced the seating from 75 seats to 65 seats, did not violate the circuit court's mandate,

14

nor the holdings the circuit court rendered in its opinion ordering remand.[5]  *Eastern Outdoor II, supra*, 146 Md. App. at 303.  In short, the Board did not exceed the scope of the Remand Order.

***Upon remand, the Board's approval of the special exception without the variances did not contradict the circuit court's remand mandate or opinion upon which it was based.***

Further, the Board's approval of the special exception without the variances -- originally sought so that the SDP could meet the Code's parking requirements -- did not contradict the opinion upon which the Remand Order was based because: (1) the opinion did not specifically address the variances' role in meeting the parking requirements; and (2) the Board was able to explain how the special exception could be granted without variances, thereby not contradicting the circuit court's opinion affirming the denial of those variances.

Protestants argue that the Board is bound by the "law of the case" in that once a court makes a definitive ruling about an issue in the life of a case like the dispute here -- that has now been litigated twice before the Board, the circuit court, and this Court -- such prior rulings are binding as to that issue.  Protestants assert that the circuit court's ruling definitively settled that: (1) the Board was correct in denying the requested variances, thus the issue of variances cannot be relitigated; and (2) that variances would be needed for the special exception to go forward and comply with parking mandates.  Protestants essentially argue that, upon remand, the only viable option for the Board was to deny the special

---

[5] While not dispositive, it is worth noting that Noreast's revisions to the SDP came *before* the circuit court's Remand Order, and not in response to it.  Despite its initial appeal of the variance denials, it appears Noreast adjusted its plans accordingly.

15

exception since its hands were otherwise tied by the previously affirmed denial of the variances.

Under the "law of the case" doctrine, once an appellate court rules on a question presented on appeal, litigants and subsequent courts ruling on that particular matter are bound by the law of that previous decision, "unless changed or modified after reargument, and neither the questions decided nor the ones that could have been raised and decided are available to be raised in a subsequent appeal." *Md.-Nat'l Cap. Park & Plan. Comm'n v. Anderson*, 179 Md. App. 613, 625–26 (2008) (quoting *Fid.-Balt. Nat'l Bank & Tr. Co. v. John Hancock Mut. Life Ins. Co.*, 217 Md. 367, 372 (1956)). The doctrine aims to prevent piecemeal litigation of successive appeals involving the same questions previously decided. *Balt. Cnty. v. Fraternal Ord. of Police, Balt. Cnty. Lodge No. 4*, 449 Md. 713, 730 (2016). Thus it is a tool of appellate procedure and judicial economy, but not a "fixed, immutable doctrine." *Id.*

The circuit court's Remand Order held Noreast "failed to meet its burden of showing that the decision of the Board of Appeals denying its request for variance was error." *Homick*, *supra,* No. C-02-CV-20-001009, slip op. at 18. The court ruled that the Board did not err when it decided the need for the variance under the original SDP was based on the number and size of proposed uses and parking needed for the property, not on the uniqueness of the property. The court went on to affirm the Board's finding that "no particular hardship existed sufficient to support the granting of the variance." *Id.* at 22. Nowhere in the Remand Order does it address the factual details of the particular variances sought and denied, let alone the specific nine spaces under the overhang highlighted by

16

Protestants as needed, but not permitted by the Code, to meet the Code's parking minimums. Instead, the court noted that the Board's incorporation of the Department's staff report ("the Report") into its initial assessment of the application seemed to contradict the Board's decision to permit the special exception while denying the variances, to which the court sought further explanation.[6]

Simply put, there is no "law of the case" regarding the variances outside of the affirmance of their denial. *See Md.-Nat'l Cap. Park & Plan. Comm'n*, *supra*, 179 Md. App. at 627–28. As such, Noreast cannot relitigate that denial. *Id.* This does not mean the Board could not, upon remand, reconsider the application for the special exception based on new evidence such as modifications to the SDP or any other changes of facts or circumstances that would aid the Board in "adequately articulat[ing] its findings in light of the apparent inconsistency of approving one request while denying a related request." *Homick*, *supra*, No. C-02-CV-20-001009, slip op. at 8.

Upon remand, the Board did not reject the "law of the case" because it was able to point to modifications in the plan, including the zoning district boundary adjustment already affirmed by this Court (making that the "law of the case" as to that issue), a

---

[6] The Department of Planning and Zoning produced a report on May 8, 2019 assessing the Site Development Plan submitted by Noreast. The Board proceeded to adopt many of these findings in its March 3, 2020 order and opinion denying variances while conditionally approving the special exception. The Department of Planning's report concluded that the nine spaces located under the proposed dwelling units in the SDP would likely require a variance. The Board did not expressly adopt this finding in its order and opinion, instead concluding that the requested variances do not meet the respective "practical difficulties" and "unnecessary hardship" standards, without specific mention of the disputed nine spots.

17

reduction in seating from 75 to 65 seats, and the adoption of the twenty conditions attached to the order originally approving the special exception. Indeed, all these issues address the circuit court's concerns regarding the incongruity between the approval of the special exception and the denial of the variances. Therefore, the Board did not violate the "law of the case" doctrine, the limits of the Remand Order, or the opinion from which that mandate emanated.

## III. The Board Adhered to the Requirements of the Code By Creating a Record with Substantial Evidence to Support the Approval of the Special Exception.

The Board articulated findings of fact made by the Department in both the initial approval of the special exception and in the Decision again granting the application following remand in its analysis of how the original SDP and the subsequent modifications aligned with the relevant provisions of the Code governing special exceptions. The Board adopted and incorporated into its approval of the special exception the conditions recommended by the Department to ensure future compliance with those provisions as the project progressed. Based on the Department's evaluation of code compliance, the relevant law permitting the adoption of such findings and the utilization of conditions when approving special exceptions, and the deferential standard under which this Court reviews such agency interpretations, we hold substantial evidence existed to support the Board's Decision.

A "special exception" is the grant of a specific use not permitted by right but provided for within a jurisdiction's comprehensive zoning plan upon a finding: (1) that the requirements for such an exception on the subject property can be satisfied; and (2) that the

18

use is generally consistent with the plan and the existing neighborhood. *See* LU § 1-101(p) (2012, Suppl. 2022). "The special exception use is part of the comprehensive zoning plan sharing the presumption that, as such, it is in the interest of the general welfare, and therefore valid." *Bd. of Cnty. Comm'rs of Wash. Cnty. v. Perennial Solar, LLC*, 464 Md. 610, 629 (2019)) (quoting *Schultz v. Pritts*, 291 Md. 1, 11 (1981), "the seminal case in Maryland on special exceptions"). If an "applicant demonstrates compliance with the prescribed standards and requirements set forth in the relevant statute or regulation, then there is a presumption that the use is in the interest of the general welfare, a presumption that may only be overcome by probative evidence of unique adverse effects." *Clarksville Residents Against Mortuary Def. Fund, Inc. v. Donaldson Props.*, 453 Md. 516, 543 (2017). Operating under this presumption, this Court assesses whether the Board based its Decision on erroneous interpretations of the relevant Code sections and whether the Board failed to find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Piney Orchard Cmty. Ass'n*, *supra*, 231 Md. App. at 91–92. Here we answer both questions in the negative.

Under the Code, once an applicant submits an application, the Planning and Zoning Director, or a similar city department, must review it and prepare a staff report that will be transmitted to the Board prior to public hearings. Annapolis, Md., Code § 21.26.030(B)(2). A decision by the Board approving or denying a special exception must be based upon written findings addressing specific aspects of the design plan articulated in the Code. *See generally* § 21.26.050. Because Protestants focus their complaint on the sufficiency of the

Board's findings as to parking provisions of the Code, this Court will parse those findings as well.

The Property sits in a B2 commercial zoning district. Restaurants of more then 50 seats require a special exception to be permitted in a B2 zoning district. § 21.64.540(C)(1)(a). Special exceptions for food service establishments, like the proposed restaurant in Noreast's application, require the Board to review if and how adequate parking can be made available in accordance with the Code. § 21.26.050(G)(2)(c). Restaurants in B2 zoning districts must provide spaces for 30 percent of their patronage capacity. § 21.66.130. Because Noreast's application also included four dwelling units and 2,038 square feet of office space, an additional 10 spaces must be on site. *Id.* (requiring one space per dwelling unit, and one space per 300 sq. ft. of non-retail office space).

Noreast's original application proposed 26 parking spots on the Property, relying on setback and bufferyard variances to achieve this number. Following the denial of the variances and the granting of the zoning district boundary adjustment, Noreast modified the SDP, enhancing bufferyards to comply with the relevant sections of the Code and decreasing the onsite parking spaces from 26 to 23, the maximum number that could now fit on the property by right.[7] *See Homick*, *supra*, No. 262, slip op. at 8 ("The approval of

_____

[7] Nine "overhang" spaces, located on the first floor of the 424 Fourth Street structure, sit at the heart of Protestants' argument that the special exception cannot be approved without the variances. Protestants claim that the SDP cannot meet the parking requirements because those nine spaces remain out of consideration without the variances. Protestants claim Noreast needed variances to allow parking on that part of the property

20

the [zoning district boundary adjustment] would legitimize and reconfigure the parking spaces that exited at the rear. The reconfigured spaces would further conform to the code criteria."). Noreast's initial application included a Parking Management Plan in which the restaurant would use just 13 spaces by limiting its capacity to 45 seats until 5:30 p.m. on weekdays. A sticker system, along with lease provisions and signage conveying parking restrictions, would be used for tenants of the office space so that those six spaces would become available to the restaurant on weekday evenings and all day on weekends. *See* § 21.66.030(G)(1) ("Parking spaces may serve more than one use provided documentation is provided to the satisfaction of the Planning and Zoning Director that: the parking facility has sufficient capacity to meet the parking requirements of all the uses requiring the parking at any one time.").

The Board adopted this plan in condition nine of the twenty conditions attached to the approval of the special expectation. To comply with these conditions, Noreast reduced the proposed capacity seating at the restaurant by 10 seats, from 75 to 65, which lowers the required parking from 22 spaces to 19. Therefore, once the four residential spots are added, the 23 spaces in the SDP, used in accordance with Parking Management Plan, provide sufficient parking for all proposed uses without the need for variances, as noted by the

---

due to restrictions on parking with side and bufferyards under the property's original zoning restrictions. As Noreast's counsel clarified at hearings both before the Board and before the circuit court during the second appeal of the special acceptance's approval, the modified SDP included a 20-foot buffer along the neighboring residential property, as the Code requires, and 10-foot buffers along neighboring nonresidential properties, as required by the Code. §§ 21.62.120(G), 21.66.050(B)–(C).

Board in its June 8, 2021 Decision explaining its granting of the special exception with conditions.

Upon review of the initial applications submitted by Noreast -- for the variances, the zoning district boundary adjustment, and the special exception -- the Department compiled a comprehensive report detailing relevant provisions of the Code and the applications' adherence to those provisions. In drafting its report, the Department reviewed and considered public comment, the history of the current and prior zoning alignment of the property and neighborhood, a Traffic Impact Study, the adequacy of public facilities and nearby infrastructure, comments from the Annapolis Department of Transportation, and input from the Annapolis Department of Comprehensive Planning. The Department provided a detailed analysis of each zoning modification sought by Noreast and concluded with a recommendation as whether or not the Board should approve each application. The Report spends roughly seven pages reviewing the proposed special exception's compliance with relevant code provisions under Section 26.26.050, ultimately recommending its approval, subject to the approval of the zoning district boundary adjustment and variances, which were also recommended for approval.

In recommending the approval of the special exception, the Department articulated twenty conditions, most of which related to the SPD and Code compliance, that the Board should require if it granted the special exception. Included in the conditions was a requirement that Noreast implement and enforce the Parking Management Plan through restrictive covenants and lease provisions that ensured all tenants comply with the plan in perpetuity.

The Board adopted many of the Report's findings when issuing its March 3, 2020 opinion and order granting the zoning district boundary adjustment and the special exception but denying the variances.[8] "It [was] not unreasonable for the [Board] to rely on a Staff Report, as the [Board] did in this case, if the Staff Report is thorough, well-conceived, and contains adequate findings of fact." *W. Montgomery Cnty. Citizens Ass'n v. Montgomery Cnty. Plan. Bd. of Md.-Nat'l Cap. Park & Plan. Comm'n*, 248 Md. App. 314, 337 (2020) (quoting *Md.-Nat'l Cap. Park & Plan. Comm'n v. Greater Baden-Aquasco Citizens Ass'n*, 412 Md. 73, 110 (2009)), *cert. denied sub nom. W. Montgomery Cnty. Citizens Ass'n v. Montgomery Cnty. Plan. Bd.*, 474 Md. 198 (2021). The extensive fact finding and analysis of Code compliance, that incorporated review from other city agencies charged with enforcing the Code and the comprehensive plan, provides relevant evidence that reasonable minds would accept to support the Board's approval of the special exception. *Piney Orchard Cmty. Ass'n*, *supra*, 231 Md. App. at 91–92.

Further, the Board's grant of the special exception, dependent upon current and future compliance with the conditions outlined in its Decision, adheres to both the Code

---

[8] Any incongruency between the Board's denial of the variances and the Department of Planning and Zoning's recommendation of their approval appears to derive from the differing criteria each body reviewed when evaluating the request. The Department assessed whether the variance request aligned with the criteria articulated in Section 21.28.050 of the Code. The Board, however, reviewed the requests under the relevant "hardship" standards for area and use variances, with the applicant failing to convince two of the four board members such hardship existed. Any further discord between the granting of the special exception and the denial of the variances can be resolved through review of the Board's required conditions and Noreast's modifications of the SDP bringing the project into compliance with the Code.

and Maryland case law regarding special exceptions. When approving a special exception, the Board may stipulate conditions and restrictions upon an application deemed necessary for the public interest and to secure compliance with the Code. § 21.26.030(B)(5). "Because special exceptions and conditional uses are legislatively-created, we have repeatedly held that 'they enjoy the presumption of correctness and are an appropriate tool for the exercise of a local government's police powers.'" *Clarksville Residents Against Mortuary Def. Fund, Inc.*, *supra*, 453 Md. at 541 (quoting *Mayor & Council of Rockville v. Rylyns Enters., Inc.*, 372 Md. 514, 542–42 (2002)). Courts should defer to the conclusions of the zoning body granting or denying an application where the evidence makes the question of the special exception's harmony with the jurisdiction's zoning plan "fairly debatable." *People's Couns. for Balt. Cnty.*, *supra*, 406 Md. at 101 (citing *Schultz v. Pritts*, 291 Md. 1, 11 (1981)); *see also Eastern Outdoor II*, *supra*, 146 Md. App. at 291 ("[A] proposed conditional use is prima facie valid absent any fact or circumstance negating that presumption.").

As the Board explained in its Decision following remand, denying the variances while approving the special exception shows "the Board's reliance on the special exception conditions to assure compliance with parking requirement for any modified proposal relying on the special exception." One member of the Board expressed this same sentiment during a hearing following the Remand Order:

> "[We] didn't have the ability while we were making our ruling to come up with a specific number of seats that they were allowed. . . . [We] said they can have their special exception so long [as] parking is met and whatever that number is, whether it's 51, 57 or 60 or 65."

24

From the Board's perspective, the 75 seats represented the upper limits of the proposed use, with the understanding that number could be lower as Noreast adjusted its plans to comply with each condition in order to proceed with the project. While Protestants saw such conditions as a means for Noreast to skirt the requirements of the Code, the Board utilized those conditions as a means of enforcing it. The Code clearly provides that approving special exceptions, and requiring such development to adhere to prescribed conditions, is valid. § 21.26.030(B)(5). Because of the deference we give to an administrative body applying the laws it is tasked to enforce, we hold that the Board adhered to the requirements of the Code in granting the special exception, and that substantial evidence exists to affirm the Board's Decision. *Willow Grove Citizens Ass'n*, *supra*, 235 Md. App. at 168. In other words, the Board's granting of the special exception was not based on an erroneous interpretation of law and cannot be reversed on such grounds.

## IV. The Board Did Not Act Arbitrarily or Capriciously by Approving the Special Exception.

Lastly, Protestants ask this Court to reverse, arguing that the Board's actions were "arbitrary and capricious." "Most cases, however, recognize as a threshold matter the extremely deferential nature of the 'arbitrary or capricious standard.'" *Harvey v. Marshall*, 389 Md. 243, 299 (2005). "Some cases suggest that the meaning of 'arbitrary or capricious' varies according to the level of discretion afforded to a particular agency." *Id.* at 301. In reviewing the grant or denial of a special exception, so long as the Board can show it applied the appropriate standards and adhered to relevant provisions of the Code, a

presumption exists its decision is in the interest of the general welfare and was not arbitrary or capricious. *Clarksville Residents Against Mortuary Def. Fund*, *supra*, 453 Md. at 543.

Protestants argue that the Board acted "arbitrarily and capriciously" by allowing "personal preference" to seep into its considerations. Protestants point to § 21.26.060 of the Code, which requires a one-year wait period for resubmission after the initial denial of the special exception. Protestants assert that the Board weighed personal preference into its decision making by lamenting how a strict interpretation of the Code, requiring Noreast to wait a full year to submit the new application adjusting the seating from 75 to 65 seats, would be "formalistic and renders the development approval process of the Code virtually unworkable." Among the many factors enumerated in the Code that the Board must consider in approving a special exception, inconvenience to the applicant or expediency of the development process are not listed. *See generally* § 21.26.050. Therefore, Protestants argue that the Board's Decision was arbitrary and capricious because it unlawfully interjected personal preference into the special exception's approval by weighing concerns of efficiency in the application process. *Harvey*, *supra*, 389 Md. at 299 ("'Arbitrary or capricious' decision-making, rather, occurs when decisions are made impulsively, at random, or according to individual preference rather than motivated by a relevant or applicable set of norms.").

Nevertheless, other relevant portions of the Code and the record undercut this argument. The Board never denied Noreast's application, in whole or in part. The Board granted the application, based on conditions. On the initial appeal, the circuit court's Remand Order did not disturb that approval. It simply sought clarification as to how the

Board reached its conclusion despite potential inconsistencies. Therefore, Section 21.26.060's one-year wait period does not apply.

Having established that the modified SDP submitted and considered by the Board upon remand did not violate the Remand Order, it also did not violate the Code. Following the zoning district boundary adjustment, the Property, sits in a B2 zoning district. A B2 district only allows restaurants of 50 seats or fewer by right. § 21.64.540(C)(1)(a), (3)(a). Hence, Noreast needed a special exception for any restaurant with *more than* 50 seats. *Id.* Therefore, Noreast's need for the special exception did not change, whether such an exception was for 75 or 65 seats. Indeed, so long as the number was greater than 50, Noreast would need the Board's blessing to proceed. When the Board reviewed the application and drafted its explanation of its approval (as so ordered on remand), it viewed the original application as one for "approximately 75 seats," insinuating some flexibility in the number. As Noreast's counsel explained at the hearing during the second petition to the circuit court, "there's nothing that says that the applicant is wedded to a 75-seat application. The special exception is for any number of seats more than 50." Thereafter, Noreast utilized this flexibility following the denial of the variances, realizing that it could not craft a plan that could accommodate 75 seats, but that it could draw one that, after tinkering with the parking arrangement, could seat 65.

Under its titles for both Site Design Plan Review and Special Exceptions, the Code clearly provides:

> Minor Modifications: The Planning and Zoning Director may authorize *minor adjustments* in an *approved special exception* as follows:

27

(1) Minor modifications of the size and location of drainage ways, sewers, roadways, landscape elements or other similar features, in light of technical or engineering considerations.

\* \* \*

(3) *Any request* for modification of any condition imposed on a special exception, which is *deemed by the Planning Director to be a minor modification*.

§§ 21.22.110(A), 21.26.080(A) (emphasis added); *see also* § 21.22.020(B) (differentiating a "major site design plan" modification as one involving "new construction, alterations, or renovations resulting in an increase of greater than [20] percent of gross floor area of the buildings, or where the number of parking spaces is increased by more than [20] percent," whereas a "minor site design plan" modification is "any that is not a major site design plan.").

The new plan reduced parking from 26 to 23 spots, resulting in roughly an 8 percent *reduction* of parking. Therefore, it was not a "major" modification according to the Code. § 21.22.020(B). In its correspondence with Noreast's architects, the Department appropriately labeled changes to the SDP following the denial of the variances as "minor modifications." As such, it was within the Director's discretion to permit the modification of the application and let the Board proceed with its review without having to delay the process by a year. §§ 21.22.110(A), 21.26.080(A); § 21.26.060.

Additionally, the Board's determination that a "formalistic" interpretation of the Code requiring a one-year-wait for Noreast to re-apply for the special exception "would stop the iterative approval process and allow for a strained, unworkable interpretation of the law," aligns with other provisions in the Code articulating an intent for tools like special

28

exceptions to be used flexibly to promote economic development while balancing concerns for the general welfare.  § 21.22.010 ("The purpose of this chapter is to ensure that property is developed with sound planning and design principles while allowing flexibility of design."); *see generally* § 21.02.030.  Among the myriad considerations the Board must weigh in evaluating any development proposal is the process itself, and how unyieldingly strict interpretations of code provisions may so inhibit economic growth that the goal of such land management tools is undermined.

At bottom, such questions about the appropriate balance of economic considerations are "fairly debatable," leaving this Court to defer to the Board where we cannot find evidence of erroneous applications of laws or a dearth of substantial evidence supporting the Board's conclusions.  *See People's Couns. for Balt. Cnty.*, *supra*, 406 Md. at 101.  That is not the case here.  Even without such debate, this Court does not find that the Board disregarded the appropriate standards nor strayed from the Code provisions.  As a result, the Board's granting of the special exception was neither arbitrary nor capricious.  We, therefore, affirm the Board's Decision granting the special exception.

> **JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED.  COSTS TO BE PAID BY APPELLANT.**

29